# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Jason S. Bair, | C/A. No. 3:16-cv-3897-CMC |
| Plaintiff, | |
| v. | **Opinion and Order** |
| South Carolina Department of Public Safety, | |
| Defendant. | |

Through this action, Plaintiff Jason S. Bair ("Plaintiff") seeks recovery from his former employer, South Carolina Department of Public Safety ("DPS"), for alleged employment discrimination based on his race, pursuant to 42 U.S.C. § 2000e, *et seq.*. ECF. No. 1-1. He also asserts a state law claim for defamation. *Id.* The matter is before the court on Defendants' Motion for Summary Judgment, filed July 21, 2017. ECF No. 16. Plaintiff filed his response in opposition on September 8, 2017, after being granted extensions. ECF No. 24. Defendants filed a reply on September 15, 2017. ECF No. 25.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(g), D.S.C., this matter was referred to United States Magistrate Judge Thomas E. Rogers, III for pre-trial proceedings and a Report and Recommendation ("Report"). On December 21, 2017, the Magistrate Judge issued a Report recommending that Defendant's motion for summary judgment be granted as to the federal claim, and the state claim be remanded to state court. ECF No. 27. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. DPS filed its objections on January 3, 2018. ECF No. 28. Plaintiff filed his objections on January 4, 2018. ECF No. 29. DPS filed a reply on January 17, 2018. ECF No. 30. This matter is now ripe for resolution.

**I. Standard**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the district court must "view the evidence in the light most favorable to the nonmoving party." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (citing *Tolan v. Cotton*, 134 S.Ct. 1861, 1868 (2014) (per curiam)). "Summary Judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Id.* Therefore, the court cannot weigh the evidence or make credibility determinations. *Id.* at 569. The district court may not "credit[] the evidence of the party seeking summary judgment and fail[] properly to acknowledge key evidence offered by the party opposing that motion." *Id.* at 570. However, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v.*

*Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

After conducting a *de novo* review as to the objections made, and considering the record, the applicable law, and the Report and Recommendation of the Magistrate Judge, the court agrees with the Report's recommendation that DPS's motion for summary judgment should be granted on the federal discrimination claim. However, the court declines to adopt the recommendation the defamation claim be remanded. Instead, the court also grants summary judgment for DPS on the defamation claim. Accordingly, the court adopts the Report by reference in this Order in part, going beyond the findings of the Report to address the defamation claim as well. For the reasons stated in the Report and as further addressed below, DPS is entitled to summary judgment on all claims.

**II. Discussion**

 *a. Race Discrimination*

The Magistrate Judge concluded Plaintiff cannot establish his claim for racial discrimination under either a direct method of proof or the burden-shifting method of proof. ECF No. 27. Under the direct method of proof, the Magistrate Judge found Plaintiff was unable to show DPS acted with discriminatory animus in terminating his employment, by either direct or circumstantial evidence. *Id.* at 12-17. The Report reaches a similar conclusion regarding the burden-shifting, or pretext, theory of discrimination, because Plaintiff fails to present sufficient evidence to create a dispute of fact as to whether an identified co-employee is a proper comparator for a disparate treatment claim. *Id.* at 24.

3

Plaintiff presents three objections to the Report: the Report sets forth and relies upon facts not in the record; the Magistrate Judge erred in concluding Plaintiff failed to present sufficient direct or circumstantial evidence that race was a motivating factor in his termination; and erred in concluding Plaintiff failed to identify a proper comparator and/or establish pretext for his race discrimination claim. ECF No. 29. The objections are discussed below in turn.[1]

i. Facts allegedly not in record

First, Plaintiff argues the Report takes as fact his action in dismissing a ticket issued to a fellow state trooper was a violation of DPS's policy and procedure. Plaintiff argues no such policy was ever cited or identified by DPS; therefore, a question of fact remains as to whether such a policy exists. In addition, Plaintiff contends the Magistrate Judge relied upon the polygraph examination of Plaintiff for its substantive content, in violation of South Carolina law. Plaintiff argues it was error to rely on the polygraph examination to determine the findings of DPS's Office of Professional Responsibility[2] ("OPR") were legitimate and to distinguish Plaintiff from a comparator.

In response, DPS argues Plaintiff is incorrect as to its policies or procedure that led to Plaintiff's first written reprimand. DPS contends it correctly cited Plaintiff for "Improper Conduct or Conduct Unbecoming a State Employee," and the State Employee Grievance Committee found Plaintiff violated DPS Code of Conduct Policy #100.12, Section XIII. ECF No. 30 at 4. DPS also contends the Magistrate Judge "merely notes that [a polygraph test] was given and that the OPR

---

[1] DPS objects only to the remand of the defamation claim.

[2] Complaints regarding state troopers are submitted to OPR for investigation. ECF Nos. 16 at 3; 24 at 2.

4

investigator (as opposed to this Court) weighed the results in reaching his overall conclusions." *Id.* at 5.

The court finds Plaintiff's objection unavailing. Although Plaintiff's Level I Reprimand stated Plaintiff "failed to follow proper SCDPS procedures for disposing of a traffic citation [he] issued," that does not mean there is or must be a specific DPS policy or procedure outlining the proper method for disposing of such a traffic citation. It is clear Plaintiff was cited under DPS policies #400.08 and #400.08G for "Improper Conduct/Conduct Unbecoming a State Employee," which is written in bold in Plaintiff's reprimand. *See* ECF No. 16-4, Level I Reprimand. The State Employee Grievance Committee's Final Decision also notes DPS Policy #400.08G includes sanctions for "Improper Conduct or Conduct Unbecoming a State Employee." ECF No. 16-7, Final Decision of State Grievance. Plaintiff's objection that he did not violate a DPS policy warranting a Level I Reprimand is overruled.

As to the polygraph examination, the Magistrate Judge made clear he did not consider the actual findings of the examination. ECF No. 27 at 8. Plaintiff cites page five of the Report for an "assertion that the examiner's results indicated deception;" however, the Report merely mentions the polygraph examination in the factual background. The Magistrate Judge explained that the fact that a polygraph examination was given during the OPR investigation and relied on by the OPR investigator in reaching his conclusions is relevant. This objection is overruled.

ii. Direct Method of Establishing Race Discrimination

Plaintiff objects to the Magistrate Judge's evaluation of the direct method of proof. ECF No. 29 at 7. He appears to argue DPS cited him for a Level I Reprimand without identifying an actual policy or procedure he violated; therefore, his reprimand was not a clear violation of procedure and thus race could have been a motivating factor in his reprimand and eventual

5

termination. However, as noted above, it is not necessary that DPS have a policy or procedure devoted solely to the method of disposing of traffic citations – Plaintiff was found to have violated the general policy regarding Improper Conduct. DPS determined dismissing a ticket after it was issued, along with falsely marking the ticket "disposed of" and "bench trial not guilty" (when no such trial occurred) in the system was improper conduct by Plaintiff. The court agrees with the Magistrate Judge's distinction between dismissing a ticket after it is issued (and then entering incorrect information about the disposition of that ticket into the computer system) and using discretion not to issue a ticket at the time of the traffic stop. The court further agrees the evidence regarding the citation issued by Plaintiff and disposed of improperly, and the categorization of that offense as Improper Conduct raises no indication of racial animus.

Plaintiff also objects to the Magistrate Judge's conclusion regarding his second reprimand. *Id.* at 8. Plaintiff argues it was error for the Magistrate Judge to conclude Plaintiff had sufficient evidence to prosecute the traffic citations from traffic court in Chester County on April 14, 2015, and that his testimony to the contrary was untruthful. *Id.* Plaintiff argues the available video of the traffic stop was not "evidence typically used" in a bench trial, and therefore appears to argue he had no duty to attempt to prepare himself for court if he felt he could not remember the specific traffic stops. Plaintiff argues the Magistrate Judge then erred in opining "Defendant did not reprimand Plaintiff for failing to obtain a conviction, but, essentially, for failing to prosecute them at all." *Id.* at 9. In support of this argument, Plaintiff contends his termination letter cited his primary offense as "Failure to Provide Truthful and Complete Information," not failing to prosecute the citations. *Id.* However, as noted by DPS, the termination letter clearly states "[t]he foregoing action [termination] is imposed upon you . . .for Failure to Provide Truthful and Complete Information and a second offense of Improper Conduct/Conduct Unbecoming a State

6

Employee." ECF No. 24-8. The letter explains "it was clear that you improperly performed your prosecutorial duties and were untruthful in the testimony you gave in court." *Id.* Therefore, the reasons given for Plaintiff's termination are clear, and the Magistrate Judge did not err in finding DPS reprimanded Plaintiff for, in part, improperly prosecuting the traffic citations.

Regarding his termination, Plaintiff argues the "contradicting outcome of Plaintiff's OPR as compared to Alford" is "direct evidence of race discrimination." ECF No. 29 at 10. He argues his OPR investigation was "traditional" and he was terminated for purported untruthfulness and failure to carry out prosecutorial duties; however, the investigation into a black officer's potential misconduct was "sent to OPR wherein the Chief of OPR, a black male, conduct[ed] all facets of the investigation, and opin[ed] that her actions in court, which could be clearly identified as a jury to be untruthful and contrary to her prosecutorial duties, warrant[ed] only a level I reprimand for a clerical mistake." *Id.* at 11. In other words, Plaintiff argues an officer of a different race behaved worse than he did but was not punished as severely, and the differences in how the investigations were conducted reveals racial discrimination. However, this oversimplification of the situation does not take into account the substantial differences in conduct of Alford and Plaintiff, or Plaintiff's previous reprimand.[3] Further, as noted by the Magistrate Judge, the information Plaintiff cites fails to "clearly indicate[] a discriminatory attitude at the workplace and . . .illustrate a nexus between that negative attitude and the employment action." *Letteiri v. Equant Inc.*, 478 F.3d 640, 649 (4th Cir. 2007). Plaintiff has cited no direct or circumstantial evidence pointing to a discriminatory motive for his termination.

---

[3] Plaintiff had previously received a reprimand for, *inter alia*, entering false information concerning dismissal of a traffic ticket against a fellow trooper into the record.

### iii. Burden-Shifting Method of Establishing Race Discrimination

Regarding his race discrimination claim as analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973), Plaintiff objects to the Magistrate Judge's conclusion that Alford is not a proper comparator. ECF No. 29 at 12. Plaintiff argues he and Alford were both Highway Patrol Officers for DPS and were similarly situated with respect to supervisors, because they both ultimately report to Smith, Director of DPS. He contends they were "subjected to OPR investigations for similar allegations" and therefore the Magistrate Judge's "attempt to distinguish [them] is nothing more than semantics." *Id.* at 13. Therefore, he argues, "[b]ased on the manner in which the respective OPR investigations were conducted, as well as the materially different disciplinary action issued, a jury could reasonable find that race was a motivating factor in such outcomes." *Id.* at 14.

However, this court agrees with the Magistrate Judge and finds Alford is not a valid comparator. Plaintiff objects to the Magistrate Judge's determination that Plaintiff and Alford were not similarly situated as to supervisors, noting "Smith serves as Director of Defendant" and therefore both troopers ultimately reported to him. ECF No. 29 at 12. However, even if this court were to find Plaintiff and Alford similarly situated as to supervisors, and in rank, striking differences lie in the conduct committed by Plaintiff versus Alford.

As noted by the Magistrate Judge in his thorough analysis regarding the use of Alford as a comparator, while Plaintiff and Alford may have been *alleged* to have committed similar actions, they were found to have *actually committed* very different improper actions, which appropriately led to different consequences. Specifically, while the investigation into Plaintiff's behavior

8

concluded he had committed all infractions[4] alleged, the investigation into Alford's actions found only one of five allegations could be sustained.[5] Importantly, the allegation against Alford most like those against Plaintiff, for perjury or untruthfulness in testimony, was determined by OPR to be unfounded in Alford's case. Judge Pamela Brown, who heard the case that led to Alford's investigation, stated she did not ask any questions about the case and did not recall any testimony about the testing of the evidence in the case, because the defendant pled guilty. ECF No. 24-13 at 13. Therefore, the allegation Alford committed perjury was closed as unfounded.[6] *Id.* at 23. On the other hand, courtroom audio from Plaintiff's testimony regarding traffic citations that led to his investigation confirmed he testified regarding all three citations given, twice testifying he could not remember anything and he did not have any evidence regarding the stops. ECF No. 16-6 at 4-5. Plaintiff admitted he had video footage of these traffic stops from his car and notes on one of

---

[4] Plaintiff was investigated for and found to have committed the following improper acts: failing to prosecute traffic citations in Chester County traffic court; testifying under oath untruthfully when he testified he did not remember any facts related to several traffic stops he conducted; and testifying under oath untruthfully that he did not "have any evidence or anything" in order to prosecute a speeding citation, when he had a video recording from the stop and notes that could have been used as evidence. ECF No. 16-6, OPR Investigative Report (sustaining all three allegations).

[5] Alford was investigated for making an improper charge for simple possession of marijuana; intentionally withholding vital information from the court in order to force a defendant to plead guilty to a drug charge; committing perjury when offering untruthful testimony to a Lee County Magistrate; being insubordinate and disrespectful when hanging up the phone while talking to her direct supervisor; and failing to document all evidence seized and place it in an evidence bag and failing to review the marijuana analysis report after receiving it. ECF No. 24-13, Alford OPR Investigative Report. Only the final allegation regarding failing to document all evidence and failing to review the marijuana analysis was sustained; the rest were unfounded or not sustained after investigation. *Id.* at 23.

[6] Alford was found to have committed negligence only, by failing to check her email and therefore not providing exculpatory evidence to a defendant of the court.

the tickets; therefore, he was found to be untruthful. This was one piece of evidence used to sustain the allegations against Plaintiff for untruthfulness and failure to prosecute. *Id.* Because of the different findings regarding truthfulness after investigation, it is clear Alford is not a similarly situated comparator to Plaintiff.

Plaintiff attempts to argue the investigations themselves were discriminatory, but can only point to their outcomes in support, noting "The Magistrate Judge appears to take the findings of the respective OPR investigations as fact and that the findings therein must be true." ECF No. 29 at 14. However, as noted by DPS, the results of the respective OPR investigations are facts in this case. This court does not see how examination of these investigations could lead to any conclusion other than the one reached by the Magistrate Judge. Plaintiff's objection as to the burden-shifting method of discrimination is overruled.

Therefore, as Plaintiff's objections regarding his discrimination claim have been overruled and the court agrees with the Magistrate Judge's conclusion regarding this claim, summary judgment for DPS is appropriate.

      b. *Defamation Claim*

The Magistrate Judge recommends remanding the defamation claim to state court, where this case originated. ECF No. 27. DPS objects, arguing this court should retain jurisdiction and dismiss the defamation claim. ECF No. 28. DPS contends Plaintiff does not have a valid defamation claim, as argued in the motion for summary judgment, and remand "would require the parties to spend even more of their own resources and unnecessarily burden the state court." *Id.* at 2 (citing *Coleman v. Pate*, 2017 WL 1190877, at *3 (D.S.C. Mar. 31, 2017)). Plaintiff made no objection to the recommendation to remand the defamation claim, but requested "the opportunity to object to dismissal of the state claims [*sic*] on the merits should the Court take such action."

10

ECF No. 29 at 15. Plaintiff has previously fully briefed his defamation claim in his response in opposition to summary judgment. ECF No. 24. The court treats this response as Plaintiff's opposition to dismissal of the defamation claim.

In his Complaint, Plaintiff alleges DPS committed defamation against him when it "recklessly disregarded the truth in taking personnel action against the Plaintiff." ECF No. 1-1 at ¶ 33. Plaintiff alleges DPS published statements accusing Plaintiff of violating policy and being untruthful in his communications to Plaintiff's former co-workers, court officials and employees, and "likely other members of the general public." *Id.* at ¶¶ 34-35. Plaintiff argues the statements were *per se* defamatory, because they alleged he broke the law and was unable to do his job, leading to "severe reputational loss both professionally and personally." *Id.* at ¶¶ 36-37. The claim for defamation appears to rest on two statements: the OPR investigation in which the investigator found Plaintiff was not truthful under oath, and the termination letter.[7] ECF No. 16-2, Bair dep. at 41:4-42:5.

DPS, in its motion for summary judgment, argues Plaintiff failed to state or prove a valid claim for defamation for several reasons: (1) Plaintiff failed to show Defendant or any agent made a false and defamatory unprivileged statement; (2) the statements Plaintiff claims are defamatory were subject to qualified privilege, and DPS did not go beyond the bounds of that privilege; (3) Plaintiff is a public figure and cannot show actual malice by DPS; and (4) Plaintiff's defamation claim is barred by the South Carolina Tort Claims Act ("SCTCA"). ECF No. 16-1 at 19-24.

---

[7] Plaintiff stated there were no other written or oral statements he alleged to be defamatory. ECF No. 16-2, Bair dep. at 42:6-43:9.

In response to DPS's summary judgment motion, Plaintiff argues his Level I Reprimand[8] "identified Plaintiff as having violated a policy that prohibits the dismissal of tickets in the manner that he did; one cannot violate a policy that does not exist and to therefore accuse someone of the same is defamatory." ECF No. 24 at 22. Plaintiff also alleges the accusation he was untruthful in court proceedings "rises to the level of accusing him of a crime" and DPS "has never been able to articulate how Plaintiff was untruthful." *Id.* Plaintiff also argues DPS has not established privilege and Plaintiff has shown any implicated privilege was exceeded, and distinguishes between constitutional malice and actual malice, as it applies to DPS's SCTCA argument.

To establish a claim for defamation, Plaintiff must prove: (1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm. *Fleming v. Rose*, 567 S.E.2d 857, 860 (S.C. 2002). In addition, as a public figure[9], Plaintiff must prove the statement was made with "actual malice." *Id.* "Actual malice means the publisher of the statement had knowledge the statement was false or acted with reckless disregard as to whether or not it was false." *Id.* Plaintiff must prove by clear and convincing evidence DPS "in fact entertained serious doubt as to the truth of its publication." *Id.* (citing *Elder v. Gaffney Ledger*, 533 S.E.2d 899, 902 (S.C. 2000)).

---

[8] In Plaintiff's deposition, he does not cite the Level I Reprimand as a defamatory document. However, as his response in opposition to summary judgment discusses that document, and his Complaint does refer to statements regarding violations of policy as defamatory, the court will address it here in an abundance of caution.

[9] Plaintiff is a highway patrol office with DPS. "Therefore, he is a 'public figure' for purposes of defamation law.'" *Fleming*, 567 at 860.

Plaintiff's claim for defamation fails on, at minimum, two elements of the cause of action: Plaintiff cannot show a false and defamatory statement was made, and cannot prove by clear and convincing evidence DPS knew its statements were false or acted with reckless disregard to their falsity. Plaintiff was investigated by DPS for violating DPS policy regarding Improper Conduct by disposing of a traffic citation after it was issued and entering a false report of a not guilty finding. He received a Level I Reprimand for doing so. Although he argues DPS never identified any policy Plaintiff violated and therefore to say he violated policy is defamatory; as discussed above, DPS clearly stated in the Reprimand Plaintiff violated the policy on Improper Conduct/Conduct Unbecoming a State Employee. ECF No. 16-4. Plaintiff's argument DPS must identify a specific policy related to disposal of traffic citations is unavailing, and DPS's lack of such citation does not mean the Reprimand was defamatory. Therefore, Plaintiff cannot establish a false and defamatory statement in the Level I Reprimand.

As to Plaintiff's OPR investigation report and termination letter, Plaintiff argues DPS stated he was untruthful during his testimony on three traffic citations, which Plaintiff alleges is false. However, despite Plaintiff's argument DPS has not stated how he was untruthful, DPS clearly articulated Plaintiff was untruthful by testifying in court he had "no evidence or anything" with which to prosecute three traffic citations, when he had video of the traffic stops and notes on the citations he could have used. ECF No. 16-6, OPR investigation at 10; ECF No. 24-8, Termination letter at 2. In addition, the investigation found, through courtroom audio and Plaintiff's own admissions, his statement he had no evidence to prosecute two traffic citations was untruthful because he admitted he had notes on one citation and in-car videos for both traffic stops but failed to review them. The OPR investigator made his conclusions based on Plaintiff's own admissions, as well as corroborating evidence from other sources. In addition, Plaintiff admits he

has no evidence other than his opinion these statements made by DPS were false, or that DPS knew them to be false. ECF No. 16-2, Bair dep. at 47:13-19. Therefore, Plaintiff has also failed to show the OPR investigation document and the termination letter were false. For the same reasons, Plaintiff cannot show DPS or any agent knew the identified documents were false or acted with reckless disregard to their falsity. DPS is entitled to summary judgment on Plaintiff's defamation claim.

## III. Conclusion

Having conducted a *de novo* review of the Report and underlying motion and related memoranda, and having fully considered the parties' objections and DPS's response, the court adopts the conclusions of the Report as to the race discrimination claim. The court declines to adopt the recommendation to remand the defamation claim, and finds summary judgment is appropriate on that claim as well. Defendants' motion for summary judgment is **granted** and this matter is dismissed with prejudice.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie<br>CAMERON MCGOWAN CURRIE<br>Senior United States District Judge

Columbia, South Carolina
February 6, 2018